**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| HYSKY TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No.: |
| | ) | |
| v. | ) | |
| | ) | |
| RHODRIC C. HACKMAN, as Trustee | ) | |
| for the Hackman Family Trust and | ) | |
| NILES K. CHURA, as Trustee for | ) | |
| the Chura Family Trust, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

HySky Technologies, Inc. ("Plaintiff"), by its counsel, for its Complaint for Declaratory

Judgment against Defendants Rhodric C. Hackman, as Trustee for the Hackman Family Trust

("Hackman") and Niles K. Chura, as Trustee for the Chura Family Trust ("Chura") (collectively,

"Defendants"), alleges as follows:

**Nature of Action and Relief Requested**

1.      Plaintiff HySky transferred certain unvested HySky shares to Defendants, which

were subject to repurchase options in favor of Plaintiff.

2.      Under the Restricted Stock Purchase Agreements between the parties, Defendants'

unvested shares would vest if, and only if, Plaintiff received Funding (as defined in the

Agreements) in required amounts by certain deadlines referred to as Mileposts.  If the Plaintiff did

not receive Funding by the Mileposts, the Agreements provided that Defendants' unvested shares

would be re-purchased by Plaintiff.

3.      After the Mileposts of December 31, 2022 and June 30, 2023 had passed and

Plaintiff did not receive Funding in the required amounts, Plaintiff repurchased all of Defendants'

unvested shares at the price set forth in the Agreements.  Nonetheless, Defendants have incorrectly contended in various correspondence and otherwise that they still own the unvested shares in Plaintiff.

4.      As a result, Plaintiff brings the present action seeking, among other things, a declaration that it has indeed re-purchased all of the unvested shares and Defendants have no interest in Plaintiff.

## Jurisdiction and Venue

5.      Plaintiff HySky Technologies, Inc. is a Delaware corporation with its principal place of business located at 124 Oatland Island Road, Savannah, Georgia.

6.      Defendant Hackman is an individual residing at 141 Via Paradisio, Palm Beach Gardens, Florida.

7.      Defendant Chura is an individual residing at 12494 Cavalier Drive, Woodbridge, Virginia.

8.      The Court has jurisdiction over this matter under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      Defendants have demanded more than $4,000,000 as compensation for the repurchased unvested shares, which are the subject of the declaratory relief sought in this Complaint.

10.      Venue is proper in this District under 28 U.S.C. §1391(b)(2) because this is a civil action founded on diversity and a substantial part of the events giving rise to this claim occurred in this District.

2

**Facts**

**B.    The Parties Enter into the Restricted Stock Purchase Agreements**

11.    For many years since Plaintiff was organized approximately 15 years ago, Defendants have been in communication with Plaintiff regarding the development of its business. Defendant Chura actually worked for one of Plaintiff's lenders and both Defendants have at various times pursued Funding for Plaintiff.

12.    In connection with that relationship, the parties decided to enter into agreements whereby Defendants would obtain certain shares in Plaintiff if Plaintiff obtained Funding (as defined in the Agreements) in specified amounts by certain dates.

13.    On or about October 28, 2022, HySky and Hackman entered into a Restricted Stock Purchase Agreement ("Hackman RSA") whereby HySky agreed to sell Hackman Eleven Thousand Seven Hundred Fifty (11,750) unvested shares of HySky's common stock ("Hackman Unvested Shares") for $0.01 per share.  A true and correct copy of the Hackman RSA is attached hereto as Exhibit A.

14.    On or about October 28, 2022, HySky and Chura entered into a Restricted Stock Purchase Agreement ("Chura RSA")[1] whereby HySky agreed to sell Chura Eleven Thousand Seven Hundred Fifty (11,750) unvested shares of HySky's common stock ("Chura Unvested Shares") for $0.01 per share.  A true and correct copy of the Chura RSA is attached hereto as Exhibit B.

---

[1] The Hackman RSA and Chura RSA are identical, other than the names of the purchaser in each agreement. Accordingly, allegations relating to the terms of the agreements will refer to them collectively as the "Agreement" or Agreements."

15.     Under the Agreements, "Shares shall initially be unvested…and subject to the Company's Repurchase Option and Irrevocable Proxy...Each Vesting Date shall be determined as provided in the Vesting Table below."  Agreements, ¶ 2.

16.     The Hackman Unvested Shares and the Chura Unvested shares (sometimes collectively referred to herein as the "Unvested Shares") would vest if and only if certain fundraising mileposts (set forth in the Vesting Table) were met.

17.     The Vesting Table provides:

| Vesting Table | | | |
|---|---|---|---|
| Row No. | Date and amount and conditions of Funding ("Milepost") | Number of Shares to become Unvested and released from the Repurchase Option | Action of Company and Purchaser if Failure to Attain Milepost |
| 1. | December 31, 2022; Funding for the Company's discretionary use for valid corporate purposes equal to a minimum of $3,000,000. | 282 shares | The Company will repurchase 282 shares. |
| 2. | June 30, 2023; Funding of $12,000,000 including the amount of Line 1 above.  Some part of the Funding must be invested as Equity Capital as defined herein. | 446 Shares | Unvested Shares will be repurchased and agreement is terminated except in its sole discretion, the Company may extend the date for performance. Purchaser will retain any vested shares. |
| 3. | June 30, 2024; Funding of $20,000,000 including the amounts of Rows 1 and 2 above. | 3,666 Shares | Unvested Shares will be repurchased and agreement is terminated except in its sole discretion, the Company may extend the date for performance. Purchaser will retain any vested shares. |
| 4. | June 30, 2025. | 7,356 Shares | Unvested Shares will be repurchased and agreement is terminated except in its sole discretion, the Company may |

| Row No. | Date and amount and conditions of Funding ("Milepost"): | Number of Shares to become Unvested and released from the Repurchase Option | Action of Company and Purchaser if Failure to Attain Milepost |
|---|---|---|---|
| | Funding of $30,000,000 including the amounts of Rows 1, 2 and 3 above. | | extend the date for performance. Purchaser will retain any vested shares. |

18. As to the Repurchase Option (as defined in the Agreements), the "Company shall, repurchase at a price per share equal to the Cash Purchase Price (the "Repurchase Price") any of the Unvested Shares which have not yet been released from the Repurchase Option pursuant to Section 2 …at the occurrence of the following:

> (A) At any date provided in the Vesting Table if the Company fails to attain any Milepost therein provided; and
>
> (B) On the date three months after the date Niles Chura ceases his continuous service to the Company as an employee, director, or service provider or consultant to the Company,

Agreements, ¶ 3(A).

19. The Repurchase Option "shall be exercised by Plaintiff by delivering to Defendants written notice and a check in the amount of the Aggregate Repurchase Price." *Id.* "Upon delivery of such notice and payment of the aggregate Repurchase Price, the Company [Plaintiff] shall become the legal and beneficial owner of the Unvested Shares being repurchased and all rights and interests therein or relating thereto…" *Id.*

20. After the parties entered into the Agreements, Plaintiff's principal shareholder delivered a side letter to the Defendants stating that it would vote to elect each of the Defendants in their individual capacities, to Plaintiff's Board of Directors. Defendants were then appointed to Plaintiff's Board of Directors.

5

21. Neither Defendant served in any other role or capacity for Plaintiff other than as a Director.

22. Plaintiff's By-Laws allow the removal of directors as follows:

> 3.11.   <u>Removal of Directors</u>.  Unless otherwise restricted by the Certificate of Incorporation or by law, any director or the entire Board of Directors may be removed, with or without cause, by the holders of a majority of shares entitled to vote at an election of directors.

A true and correct copy of Plaintiff's By-Laws are attached hereto as Exhibit C.

**B.**     **The Company Fails to Attain the Mileposts in the Vesting Table, Triggering the Repurchase Options**

23.     None of the Mileposts listed in the Vesting Table were met.  Specifically:

- As of December 31, 2022, the Company did not receive Funding for the Company's discretionary use for valid corporate purposes equal to a minimum of $3,000,000 ("First Milepost").

- As of June 30, 2023, the Company did not receive Funding of $12,000,000 (including the $3,000,000 noted in the above bullet point) ("Second Milepost").

24.     As set forth in the Vesting Table, if the First Milepost is not met, the "Company will repurchase 282 shares."  If the Second Milepost is not met, "Unvested Shares will be repurchased and agreement is terminated…"  Agreements, ¶ 2(D).

25.     On or about July 23, 2023, Plaintiff sent Defendant Hackman notice (the "Hackman Repurchase Notice") that the Second Milepost had not been met and, as a result, it was repurchasing the Hackman Unvested Shares pursuant to Paragraph 3 of the Hackman RSA and the Hackman RSA was terminated.  Plaintiff also enclosed a check for the Repurchase Price of $117.50.  A true and correct copy of the Hackman Repurchase Notice and check for the Repurchase Price are attached hereto as Exhibit D.

26.     On July 24, 2023, Plaintiff sent Defendant Hackman the e-mail attached hereto as Exhibit E notifying him that he had been removed from the Board of Directors of Plaintiff, effective immediately.

27.     Holders of a majority of shares entitled to vote on the election of Directors of Plaintiff authorized Plaintiff to remove Hackman as a Director of Plaintiff.

28.     On or about July 23, 2023, Plaintiff sent Defendant Chura notice (the "Chura Repurchase Notice") that the Second Milepost had not been met and, as a result, it was repurchasing the Chura Unvested Shares pursuant to Paragraph 3 of the Chura RSA and the Chura RSA was terminated.  Plaintiff also enclosed a check for the Repurchase Price of $117.50.  A true and correct copy of the Chura Repurchase Notice and check for the Repurchase Price are attached hereto as Exhibit F.

29.     On July 24, 2023, Plaintiff sent Defendant Chura the e-mail attached hereto as Exhibit G notifying him that he had been removed from the Board of Directors of Plaintiff, effective immediately.

30.     Holders of a majority of shares entitled to vote on the election of Directors of Plaintiff authorized Plaintiff to remove Chura as a Director of Plaintiff.

**C.      Defendants Attempt to Contest the Repurchase**

31.     Since July 2023, numerous communications have taken place between Defendants and Plaintiff with respect to the repurchased shares.

32.     On June 17, 2024, Carl Anderson, counsel for Defendants, sent Plaintiff a "Demand for Remedial Action and Compliance with Securities Agreement," which included conclusory claims that Plaintiff was liable to Defendants for breach of contract, tortious interference and fraud

and demanded payment to Defendants of $4,700,000.00 ("Defendants' Demand").  A true and correct copy of Defendants' Demand is attached hereto as Exhibit H.

33.     This "demand" is replete with conclusory statements and unsupported assertions and does not provide any legitimate basis to contest Plaintiffs' repurchase of the Unvested Shares.

34.     Defendants' Demand also contends that Defendants still own certain shares in Plaintiff despite Plaintiff having repurchased all of the Unvested Shares pursuant to the Repurchase Option.

### COUNT I: Declaratory Judgment

35.     Plaintiff incorporates and restates the allegations in the preceding paragraphs as though set forth herein verbatim.

36.     An actual controversy exists between Plaintiff and Defendants and, by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties and to grant such further and other relief as may be necessary.

37.     The Agreements provide that Plaintiff "shall repurchase" the Unvested Shares for the Cash Purchase Price ($0.01 per share) at the occurrence of: a) Company's failure to meet any Milepost in the Vesting Table; and b) on the date three months after Defendants cease continuous service to Plaintiff "as an employee, director, or service provider or consultant to the Company." Agreement, ¶ 3.

38.     The Company did not meet any of the mileposts in the Vesting Table, including the First Milepost or the Second Milepost.

39.     As of at least June 24, 2023, Defendants had ceased providing service to Plaintiff, including as directors or otherwise.

40.     Plaintiff exercised its Repurchase Option by complying with the notice and payment requirements set forth in paragraph 3(A) of the Agreements by sending the Repurchase Notices and payments attached as Exhibits D and F.

41.     As a result, Plaintiff has repurchased the Hackman Unvested Shares and the Chura Unvested Shares.  Neither Hackman nor Chura own any shares in Plaintiff.

FOR RELIEF, Plaintiff HySky Technologies, Inc. respectfully requests that this Court enter judgment in its favor and against Defendants Rhodric C. Hackman, as Trustee for the Hackman Family Trust and Niles K. Chura, as Trustee for the Chura Family Trust as follows:

A.     Declaring that:

    (i)     Plaintiff has repurchased all of Defendant Hackman's Unvested Shares;

    (ii)    Plaintiff has repurchased all of Defendant Chura's Unvested Shares;

    (iii)   Neither Defendant Hackman nor Defendant Chura owns any shares in Plaintiff; and

B.     Granting all other appropriate relief.

This 26th day of July, 2024.

ARNALL GOLDEN GREGORY LLP

/s/ Aaron M. Danzig
Aaron M. Danzig
Georgia Bar No. 201515

171 17th Street NW, Suite 2100
Atlanta, GA  30363
Phone: 404-873-8504
Aaron.Danzig@agg.com

Todd Rowden (*pro hac vice* application forthcoming)
TRowden@taftlaw.com
James Oakley (*pro hac vice* application forthcoming)
JOakley@taftlaw.com

9

Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2600
Chicago, IL  60601
Phone: 312-527-4000

*Counsel for Plaintiff HySky Technologies, Inc.*

10

# EXHIBIT A

# RESTRICTED STOCK PURCHASE AGREEMENT

This Restricted Stock Purchase Agreement (the "Agreement") is made as of October 28, 2022 and supersedes all other agreements (the "**Effective Date**"), by and between and HySky Technologies, Inc, a Delaware corporation with principal offices located at 124 Oatland Island Rd, Savannah, GA 31410 (the "**Company**"), and Hackman Family Trust (the "**Purchaser**").

In consideration of the mutual covenants and representations set forth below, the Company and the Purchaser agree as follows:

1.  **Purchase and Sale of the Shares.**  Subject to the terms and conditions of this Agreement, the Company agrees to sell to the Purchaser, and the Purchaser agrees to purchase from the Company, as of the Effective Date, Eleven Thousand Seven Hundred Fifty Shares of the Company's Common Stock, par value $0.01 per share (the "**Shares**"), for good and valuable consideration including payment of a cash purchase price of $0.01 per share (the "**Cash Purchase Price**").  The parties acknowledge the Company's outstanding Kennedy Lewis Capital Partners Master Fund, LP loan made December 19, 2017, and the documents evidencing the loan and its terms, especially those documents granting to the lender a blanket security interest attached to the Company's assets.

2.  **Vesting.**

    A.   ***Vesting.***  The Shares shall initially be unvested (the "Unvested Shares") and subject to the Company's Repurchase Option and the Irrevocable Proxy (each of Company's Repurchase Option and Irrevocable Proxy are defined below).  The Unvested Shares shall vest and be released from the Repurchase Option upon vesting. The Irrevocable Proxy will be discharged only for the portion of Unvested Shares which vest.  Each Vesting Date shall be determined as provided in the Vesting Table below.

    B.   ***"Funding" Definition.***  or purposes of the Agreement, "Funding" shall include (a) any cash infusions received by the Company or future cash infusions pursuant to legally enforceable binding contracts for (i) Equity Capital or debt financings, (ii) grants, etc., entered into by the Company, and (b) any amounts approved by any entity affiliated of the US Government for the benefit of the Company, directly or indirectly, including but not limited to the request submitted by US Special Operations Command (USSOCOM) for a project titled "Multi-Functional High Frequency Communications and Location Platform (MCLP). Equity Capital means a cash infusion to the Company for the purchase of capital stock, preferred or common or otherwise for which return to the payer is made along with existing stockholders. Any equity or debt capital infusions will be on terms acceptable to the Company, in its sole discretion.

    C.   ***Acceleration upon a Change of Control.***  In the event of a Change of Control (as defined below), 100% of the total number of Unvested Shares that have not been released from the Repurchase Option shall immediately vest and be released from the Repurchase Option, *provided* that Niles Chura's continuous status as an employee,

director, or service provider of, or formal or informal advisor/consultant to, the Company has not been terminated prior to such time.

D.    .*"Change of Control" Definition.*    For purposes of this Agreement, a "**Change of Control**" means either: (1) the acquisition of the Company by another entity by means of any transaction or series of related transactions (including, without limitation, any reorganization, merger or consolidation or stock transfer, but excluding any such transaction effected primarily for the purpose of changing the domicile of the Company), unless the Company's stockholders of record immediately prior to such transaction or series of related transactions hold, immediately after such transaction or series of related transactions, at least 51% of the voting power of the surviving or acquiring entity (*provided* that the sale by the Company of its securities for the purposes of raising additional funds from one or more third parties shall not constitute a Change of Control hereunder); or (2) a sale of all or substantially all of the assets of the Company.

| | Vesting Table | | |
|---|---|---|---|
| Row No. | Date and amount and conditions of Funding ("Milepost"): | Number of Shares to become Unvested and released from the Repurchase Option | Action of Company and Purchaser if Failure to Attain Milepost |
| 1. | December 31, 2022; Funding for the Company's discretionary use for valid corporate purposes equal to a minimum of $3,000,000. | 282 shares | The Company will repurchase 282 shares. |
| 2. | June 30, 2023; Funding of $12,000,000 including the amount of Line 1 above. Some part of the Funding must be invested as Equity Capital as defined herein. | 446 Shares | Unvested Shares will be repurchased and agreement is terminated except in its sole discretion, the Company may extend the date for performance. Purchaser will retain any vested shares. |
| 3. | June 30, 2024; Funding of $20,000,000 including the amounts of Rows 1 and 2 above. | 3,666 Shares | Unvested Shares will be repurchased and agreement is terminated except in its sole discretion, the Company may extend the date for performance. Purchaser will retain any vested shares. |

| Vesting Table | | | |
|---|---|---|---|
| Row No. | Date and amount and conditions of Funding ("Milepost"): | Number of Shares to become Unvested and released from the Repurchase Option | Action of Company and Purchaser if Failure to Attain Milepost |
| 4. | June 30, 2025; Funding of $30,000,000 including the amounts of Rows 1,2 and 3 above. | 7,356 Shares | Unvested Shares will be repurchased and agreement is terminated except in its sole discretion, the Company may extend the date for performance. Purchaser will retain any vested shares. |

3.      **Repurchase Option.**

A.      ***Repurchase Option***.  The Company shall, repurchase at a price per share equal to the Cash Purchase Price (the "**Repurchase Price**") any of the Unvested Shares which have not yet been released from the Repurchase Option pursuant to Section 2 (the "**Repurchase Option**") at the occurrence of the following:

(A)      At any date provided in the Vesting Table if the Company fails to attain any Milepost therein provided; and

(B)      On the date three months after the date Niles Chura ceases his continuous service to the Company as an employee, director, or service provider or consultant to the Company,

The Repurchase Option shall be exercised by the Company by delivering to the Purchaser written notice and a check in the amount of the aggregate Repurchase Price. Upon delivery of such notice and the payment of the aggregate Repurchase Price, the Company shall become the legal and beneficial owner of the Unvested Shares being repurchased and all rights and interests therein or relating thereto, and the Company shall have the right to retain and transfer to its own name, the number of Unvested Shares being repurchased by the Company.

B.      ***Assignability.***  The Company in its sole discretion may assign all or part of the Repurchase Option to one or more employees, officers, directors or stockholders of the Company or other persons or organizations.

C.      ***Irrevocable Proxy.***  Upon the issuance of stock to the Purchaser and with respect to any Unvested Shares, the Purchaser grants and irrevocably appoints, Oatland Group, LLC ("**Oatland**") or any individual designated by Oatland, and each of them individually, as the Purchaser's agent, attorney-in-fact and proxy (with full power of substitution and resubstitution), for and in the name, place and stead of Purchaser to vote (or cause to be voted) the Unvested Shares held of record by the Purchaser, at any meeting of the stockholders of the Company, however called, or in connection with any written consent of the stockholders of the Company. All power and authority hereby

conferred upon Oatland is coupled with an interest and is irrevocable, and except as herein provided, shall not be terminated by any act of Oatland or by operation of law, by lack of appropriate power or authority, or by the occurrence of any other event or events and shall be binding upon all beneficiaries, heirs at law, legatees, distributees, successors, assigns and legal representatives of Oatland.  For the avoidance of doubt such proxy will terminate upon the vesting of the Unvested Shares as herein provided.

4.     **Restrictions.**

A.     ***Legends.***  The Purchaser understands and agrees that the Company shall cause the legends set forth below, or substantially equivalent legends, to be placed upon any certificate(s) evidencing ownership of the Shares, together with any other legends that may be required by the Company or by applicable state or federal securities laws:

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "**ACT**") AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED UNLESS AND UNTIL REGISTERED UNDER THE ACT OR, IN THE OPINION OF COUNSEL SATISFACTORY TO THE ISSUER OF THESE SECURITIES, SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT.

THIS CERTIFICATE AND THE SHARES REPRESENTED HEREBY ARE ISSUED AND SHALL BE HELD SUBJECT TO ALL THE PROVISIONS OF THE CERTIFICATE OF INCORPORATION AND THE BYLAWS OF THE CORPORATION AND ANY AMENDMENTS THERETO, TO ALL OF WHICH THE HOLDER OF THIS CERTIFICATE, BY ACCEPTANCE HEREOF, ASSENTS.   A STATEMENT OF ALL OF THE RIGHTS, PREFERENCES, PRIVILEGES AND RESTRICTIONS GRANTED TO OR IMPOSED UPON THE RESPECTIVE CLASSES AND/OR SERIES OF SHARES OF STOCK OF THE CORPORATION AND UPON THE HOLDERS THEREOF MAY BE OBTAINED BY ANY STOCKHOLDER UPON REQUEST AND WITHOUT CHARGE FROM THE SECRETARY OF THE CORPORATION AT THE PRINCIPAL OFFICE OF THE CORPORATION.

THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO CERTAIN RESTRICTIONS ON TRANSFER, A RIGHT OF FIRST REFUSAL, AND A REPURCHASE OPTION HELD BY THE ISSUER OR ITS ASSIGNEE(S) AS SET FORTH IN THE RESTRICTED STOCK PURCHASE AGREEMENT BETWEEN THE ISSUER AND THE ORIGINAL HOLDER OF THESE SHARES, A COPY OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE ISSUER.   SUCH TRANSFER RESTRICTIONS,

RIGHT OF FIRST REFUSAL AND REPURCHASE OPTION ARE BINDING ON TRANSFEREES OF THESE SHARES.

B.     **Stop-Transfer Notices.**   The Purchaser agrees that to ensure compliance with the restrictions referred to herein, the Company may issue appropriate "stop transfer" instructions to its transfer agent, if any, and that, if the Company transfers its own securities, it may make appropriate notations to the same effect in its own records.

C.     **Refusal to Transfer.**   The Company shall not be required (i) to transfer on its books any Shares that have been sold or otherwise transferred in violation of any of the provisions of this Agreement or (ii) to treat as owner of such Shares, or to accord the right to vote or pay dividends to, any purchaser or other transferee to whom such Shares shall have been so transferred.

5.     **General Provisions.**

A.     **Choice of Law.**   This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of law.

B.     **Integration.**   This Agreement, including all exhibits hereto, represents the entire agreement between the parties with respect to the purchase of the Shares by the Purchaser and supersedes and replaces any and all prior written or oral agreements regarding the subject matter of this Agreement including, but not limited to, any representations made during any interviews, relocation discussions or negotiations whether written or oral.  The parties hereto also acknowledge that all agreements between Oatland, the Company and 15 Tango, Inc. have expired and declared null and void by the parties thereto.

C.     **Notices.**   Any notice, demand, offer, request or other communication required or permitted to be given by either the Company or the Purchaser pursuant to the terms of this Agreement shall be in writing and shall be deemed effectively given the earlier of (i) when received, (ii) when delivered personally, (iii) one business day after being delivered by facsimile or electronic mail (with receipt of appropriate confirmation), (iv) one business day after being deposited with an overnight courier service or (v) four days after being deposited in the U.S. mail, First Class with postage prepaid and return receipt requested, and addressed to the respective party at the address set forth on the first page or the signature page of this Agreement (or such other address as a party may request by notifying the other in writing).

D.     **Successors.**   Any successor to the Company (whether direct or indirect and whether by purchase, merger, consolidation, liquidation or otherwise) to all or substantially all of the Company's business and/or assets shall assume the obligations under this Agreement and agree expressly to perform the obligations under this

Agreement in the same manner and to the same extent as the Company would be required to perform such obligations in the absence of a succession.  For all purposes under this Agreement, the term "Company" shall include any successor to the Company's business and/or assets which executes and delivers the assumption agreement described in this section or which becomes bound by the terms of this Agreement by operation of law. Subject to the restrictions on transfer set forth in this Agreement, this Agreement shall be binding upon the Purchaser and his or her heirs, executors, administrators, successors and assigns.

E.   ***Assignment; Transfers.***  Except as set forth in this Agreement, this Agreement, and any and all rights, duties and obligations hereunder, shall not be assigned, transferred, delegated or sublicensed by the Purchaser without the prior written consent of the Company.  Any attempt by the Purchaser without such consent to assign, transfer, delegate or sublicense any rights, duties or obligations that arise under this Agreement shall be void.  Except as set forth in this Agreement, any transfers in violation of any restriction upon transfer contained in any section of this Agreement shall be void, unless such restriction is waived in accordance with the terms of this Agreement.

F.   ***Waiver.***  A party's failure to enforce any provision of this Agreement shall not in any way be construed as a waiver of any such provision, nor prevent that party from thereafter enforcing any other provision of this Agreement.  The rights granted the parties hereunder are cumulative and shall not constitute a waiver of either party's right to assert any other legal remedy available to it.

G.   ***Purchaser Investment Representations and Further Documents.*** The Purchaser agrees upon request to execute any further documents or instruments necessary or reasonably desirable in the view of the Company to carry out the purposes or intent of this Agreement.

H.   ***Severability.***  Should any provision of this Agreement be found to be illegal or unenforceable, the other provisions shall nevertheless remain effective and shall remain enforceable to the greatest extent permitted by law.

I.   ***Rights as Stockholder.***  Subject to the terms and conditions of this Agreement including but not limited to the grant of Irrevocable Proxy coupled with an Interest, the Purchaser shall have all of the rights of a stockholder of the Company with respect to the Shares from and after the date that the Purchaser delivers a fully executed copy of this Agreement (including the applicable exhibits and attachments to this Agreement) and full payment for the Shares to the Company, and until such time as the Purchaser disposes of the Shares in accordance with this Agreement.  Upon such transfer, the Purchaser shall have no further rights as a holder of the Shares so purchased except (in the case of a transfer to the Company) the right to receive payment for the Shares so purchased in accordance with the provisions of this Agreement, and the Purchaser shall forthwith cause the certificate(s) evidencing the Shares so purchased to be surrendered to the Company for transfer or cancellation.

J.      ***Adjustment for Stock Split.***   All references to the number of Shares and the purchase price of the Shares in this Agreement shall be adjusted to reflect any stock split, stock dividend or other change in the Shares which may be made after the date of this Agreement.

K.      ***Ownership.***   For purposes of clarity, the intent of this Agreement is that the Purchaser will own at purchase, 11.75% of the Company's outstanding shares when considered on a fully diluted basis including shares subject to compensatory options issued on or about the date hereof.

L.      ***Reliance on Counsel and Advisors.***   The Purchaser acknowledges that it has had the opportunity to review this Agreement, including any attachments hereto, and the transactions contemplated by this Agreement with its, his or her own legal counsel, tax advisors and other advisors.  The Purchaser is relying solely on its, his or her own counsel and advisors and not on any statements or representations of the Company or its agents for legal or other advice with respect to this investment or the transactions contemplated by this Agreement.

M.      ***Counterparts.***   This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute the same agreement. Facsimile copies of signed signature pages shall be binding originals.

*(Signature Page Follows)*

The parties represent that they have read this Agreement in its entirety, have had an opportunity to obtain the advice of counsel prior to executing this Agreement and fully understand this Agreement.  The Purchaser agrees to notify the Company of any change in its address below.

**Company:**
HySky Technologies, Inc.

By: _____
      Charles C. Maynard
      President and CEO

**Purchaser**
Hackman Family Trust

By: _____
      Rhodric C. Hackman, Trustee

**Address:**
141 Via Paradisio
Palm Beach Gardens 33418

# EXHIBIT B

# RESTRICTED STOCK PURCHASE AGREEMENT

This Restricted Stock Purchase Agreement (the "Agreement") is made as of October 28, 2022, and supersedes all other agreements (the "**Effective Date**"), by and between and HySky Technologies, Inc, a Delaware corporation with principal offices located at 124 Oatland Island Rd, Savannah, GA 31410 (the "**Company**"), and Chura Family Trust (the "**Purchaser**").

In consideration of the mutual covenants and representations set forth below, the Company and the Purchaser agree as follows:

1.     **Purchase and Sale of the Shares.** Subject to the terms and conditions of this Agreement, the Company agrees to sell to the Purchaser, and the Purchaser agrees to purchase from the Company, as of the Effective Date, Eleven Thousand Seven Hundred Fifty Shares of the Company's Common Stock, par value $0.01 per share (the "**Shares**"), for good and valuable consideration including payment of a cash purchase price of $0.01 per share (the "**Cash Purchase Price**"). The parties acknowledge the Company's outstanding Kennedy Lewis Capital Partners Master Fund, LP loan made December 19, 2017, and the documents evidencing the loan and its terms, especially those documents granting to the lender a blanket security interest attached to the Company's assets. The Purchaser will become a party to the HySky Technologies, Inc. Stockholders Agreement as a condition precedent to the issuance of the Shares.

2.     **Vesting.**

        A.     *Vesting.* The Shares shall initially be unvested (the "Unvested Shares") and subject to the Company's Repurchase Option and the Irrevocable Proxy (each of Company's Repurchase Option and Irrevocable Proxy are defined below). The Unvested Shares shall vest and be released from the Repurchase Option upon vesting. The Irrevocable Proxy will be discharged only for the portion of Unvested Shares which vest. Each Vesting Date shall be determined as provided in the Vesting Table below.

        B.     *"Funding" Definition.* or purposes of the Agreement, "Funding" shall include (a) any cash infusions received by the Company or future cash infusions pursuant to legally enforceable binding contracts for (i) Equity Capital or debt financings, (ii) grants, etc., entered into by the Company, and (b) any amounts approved by any entity affiliated of the US Government for the benefit of the Company, directly or indirectly, including but not limited to the request submitted by US Special Operations Command (USSOCOM) for a project titled "Multi-Functional High Frequency Communications and Location Platform (MCLP). Equity Capital means a cash infusion to the Company for the purchase of capital stock, preferred or common or otherwise for which return to the payer is made along with existing stockholders. Any equity or debt capital infusions will be on terms acceptable to the Company, in its sole discretion.

        C.     *Acceleration upon a Change of Control.* In the event of a Change of Control (as defined below), 100% of the total number of Unvested Shares that have not

been released from the Repurchase Option shall immediately vest and be released from the Repurchase Option, *provided* that Niles Chura's continuous status as an employee, director, or service provider of, or formal or informal advisor/consultant to, the Company has not been terminated prior to such time.

D.   .   ***"Change of Control" Definition.***   For purposes of this Agreement, a **"Change of Control"** means either: (1) the acquisition of the Company by another entity by means of any transaction or series of related transactions (including, without limitation, any reorganization, merger or consolidation or stock transfer, but excluding any such transaction effected primarily for the purpose of changing the domicile of the Company), unless the Company's stockholders of record immediately prior to such transaction or series of related transactions hold, immediately after such transaction or series of related transactions, at least 51% of the voting power of the surviving or acquiring entity (*provided* that the sale by the Company of its securities for the purposes of raising additional funds from one or more third parties shall not constitute a Change of Control hereunder); or (2) a sale of all or substantially all of the assets of the Company.

| Vesting Table | | | |
|---|---|---|---|
| Row No. | Date and amount and conditions of Funding ("Milepost") | Number of Shares to become Unvested and released from the Repurchase Option | Action of Company and Purchaser if Failure to Attain Milepost |
| 1. | December 31, 2022; Funding for the Company's discretionary use for valid corporate purposes equal to a minimum of $3,000,000. | 282 shares | The Company will repurchase 282 shares. |
| 2. | June 30, 2023; Funding of $12,000,000 including the amount of Line 1 above.  Some part of the Funding must be invested as Equity Capital as defined herein. | 446 Shares | Unvested Shares will be repurchased and agreement is terminated except in its sole discretion, the Company may extend the date for performance. Purchaser will retain any vested shares. |
| 3. | June 30, 2024; Funding of $20,000,000 including the amounts of Rows 1 and 2 above. | 3,666 Shares | Unvested Shares will be repurchased and agreement is terminated except in its sole discretion, the Company may extend the date for performance. Purchaser will retain any vested shares. |
| 4. | June 30, 2025. | 7,356 Shares | Unvested Shares will be repurchased and agreement is terminated except in its sole discretion, the Company may |

| Vesting Table | | | |
|---|---|---|---|
| Row No. | Date and amount and conditions of Funding ("Milepost"): | Number of Shares to become Unvested and released from the Repurchase Option | Action of Company and Purchaser if Failure to Attain Milepost |
| | Funding of $30,000,000 including the amounts of Rows 1,2 and 3 above. | | extend the date for performance. Purchaser will retain any vested shares. |

3.      **Repurchase Option.**

A.      ***Repurchase Option***.  The Company shall, repurchase at a price per share equal to the Cash Purchase Price (the "**Repurchase Price**") any of the Unvested Shares which have not yet been released from the Repurchase Option pursuant to Section 2 (the "**Repurchase Option**") at the occurrence of the following:

(A)      At any date provided in the Vesting Table if the Company fails to attain any Milepost therein provided; and

(B)      On the date three months after the date Niles Chura ceases his continuous service to the Company as an employee, director, or service provider or consultant to the Company,

The Repurchase Option shall be exercised by the Company by delivering to the Purchaser written notice and a check in the amount of the aggregate Repurchase Price. Upon delivery of such notice and the payment of the aggregate Repurchase Price, the Company shall become the legal and beneficial owner of the Unvested Shares being repurchased and all rights and interests therein or relating thereto, and the Company shall have the right to retain and transfer to its own name, the number of Unvested Shares being repurchased by the Company.

B.      ***Assignability.***  The Company in its sole discretion may assign all or part of the Repurchase Option to one or more employees, officers, directors or stockholders of the Company or other persons or organizations.

C.      ***Irrevocable Proxy.***  Upon the issuance of stock to the Purchaser and with respect to any Unvested Shares, the Purchaser grants and irrevocably appoints, Oatland Group, LLC ("**Oatland**") or any individual designated by Oatland, and each of them individually, as the Purchaser's agent, attorney-in-fact and proxy (with full power of substitution and resubstitution), for and in the name, place and stead of Purchaser to vote (or cause to be voted) the Unvested Shares held of record by the Purchaser, at any meeting of the stockholders of the Company, however called, or in connection with any written consent of the stockholders of the Company. All power and authority hereby conferred upon Oatland is coupled with an interest and is irrevocable, and except as herein provided, shall not be terminated by any act of Oatland or by operation of law, by lack of appropriate power or authority, or by the occurrence of any other event or events and shall be binding

upon all beneficiaries, heirs at law, legatees, distributees, successors, assigns and legal representatives of Oatland. For the avoidance of doubt such proxy will terminate upon the vesting of the Unvested Shares as herein provided.

4.    **Restrictions.**

      A.    *Legends.* The Purchaser understands and agrees that the Company shall cause the legends set forth below, or substantially equivalent legends, to be placed upon any certificate(s) evidencing ownership of the Shares, together with any other legends that may be required by the Company or by applicable state or federal securities laws:

> THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "**ACT**") AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED UNLESS AND UNTIL REGISTERED UNDER THE ACT OR, IN THE OPINION OF COUNSEL SATISFACTORY TO THE ISSUER OF THESE SECURITIES, SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT.
>
> THIS CERTIFICATE AND THE SHARES REPRESENTED HEREBY ARE ISSUED AND SHALL BE HELD SUBJECT TO ALL THE PROVISIONS OF THE CERTIFICATE OF INCORPORATION AND THE BYLAWS OF THE CORPORATION AND ANY AMENDMENTS THERETO, TO ALL OF WHICH THE HOLDER OF THIS CERTIFICATE, BY ACCEPTANCE HEREOF, ASSENTS. A STATEMENT OF ALL OF THE RIGHTS, PREFERENCES, PRIVILEGES AND RESTRICTIONS GRANTED TO OR IMPOSED UPON THE RESPECTIVE CLASSES AND/OR SERIES OF SHARES OF STOCK OF THE CORPORATION AND UPON THE HOLDERS THEREOF MAY BE OBTAINED BY ANY STOCKHOLDER UPON REQUEST AND WITHOUT CHARGE FROM THE SECRETARY OF THE CORPORATION AT THE PRINCIPAL OFFICE OF THE CORPORATION.
>
> THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO CERTAIN RESTRICTIONS ON TRANSFER, A RIGHT OF FIRST REFUSAL, AND A REPURCHASE OPTION HELD BY THE ISSUER OR ITS ASSIGNEE(S) AS SET FORTH IN THE RESTRICTED STOCK PURCHASE AGREEMENT BETWEEN THE ISSUER AND THE ORIGINAL HOLDER OF THESE SHARES, A COPY OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE ISSUER. SUCH TRANSFER RESTRICTIONS, RIGHT OF FIRST REFUSAL AND REPURCHASE OPTION ARE BINDING ON TRANSFEREES OF THESE SHARES.

      B.    *Stop-Transfer Notices.* The Purchaser agrees that to ensure compliance with the restrictions referred to herein, the Company may issue appropriate

"stop transfer" instructions to its transfer agent, if any, and that, if the Company transfers its own securities, it may make appropriate notations to the same effect in its own records.

C.   **Refusal to Transfer.**  The Company shall not be required (i) to transfer on its books any Shares that have been sold or otherwise transferred in violation of any of the provisions of this Agreement or (ii) to treat as owner of such Shares, or to accord the right to vote or pay dividends to, any purchaser or other transferee to whom such Shares shall have been so transferred.

5.   **General Provisions.**

A.   **Choice of Law.**  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of law.

B.   **Integration.**  This Agreement, including all exhibits hereto, represents the entire agreement between the parties with respect to the purchase of the Shares by the Purchaser and supersedes and replaces any and all prior written or oral agreements regarding the subject matter of this Agreement including, but not limited to, any representations made during any interviews, relocation discussions or negotiations whether written or oral.  The parties hereto also acknowledge that all agreements between Oatland, the Company and 15 Tango, Inc. have expired and declared null and void by the parties thereto.  Niles Chura is the Trustee of the Purchaser, which is the sole owner of 15 Tango, Inc.

C.   **Notices.**   Any notice, demand, offer, request or other communication required or permitted to be given by either the Company or the Purchaser pursuant to the terms of this Agreement shall be in writing and shall be deemed effectively given the earlier of (i) when received, (ii) when delivered personally, (iii) one business day after being delivered by facsimile or electronic mail (with receipt of appropriate confirmation), (iv) one business day after being deposited with an overnight courier service or (v) four days after being deposited in the U.S. mail, First Class with postage prepaid and return receipt requested, and addressed to the respective party at the address set forth on the first page or the signature page of this Agreement (or such other address as a party may request by notifying the other in writing).

D.   **Successors.**  Any successor to the Company (whether direct or indirect and whether by purchase, merger, consolidation, liquidation or otherwise) to all or substantially all of the Company's business and/or assets shall assume the obligations under this Agreement and agree expressly to perform the obligations under this Agreement in the same manner and to the same extent as the Company would be required to perform such obligations in the absence of a succession.  For all purposes under this Agreement, the term "Company" shall include any successor to the Company's business and/or assets which executes and delivers the assumption agreement described in this section or which becomes bound by the terms of this Agreement by operation of law.  Subject to the

restrictions on transfer set forth in this Agreement, this Agreement shall be binding upon the Purchaser and his or her heirs, executors, administrators, successors and assigns.

E.      *Assignment; Transfers.*  Except as set forth in this Agreement, this Agreement, and any and all rights, duties and obligations hereunder, shall not be assigned, transferred, delegated or sublicensed by the Purchaser without the prior written consent of the Company.  Any attempt by the Purchaser without such consent to assign, transfer, delegate or sublicense any rights, duties or obligations that arise under this Agreement shall be void.  Except as set forth in this Agreement, any transfers in violation of any restriction upon transfer contained in any section of this Agreement shall be void, unless such restriction is waived in accordance with the terms of this Agreement.

F.      *Waiver.*  A party's failure to enforce any provision of this Agreement shall not in any way be construed as a waiver of any such provision, nor prevent that party from thereafter enforcing any other provision of this Agreement.  The rights granted the parties hereunder are cumulative and shall not constitute a waiver of either party's right to assert any other legal remedy available to it.

G.      *Purchaser Investment Representations and Further Documents.* The Purchaser agrees upon request to execute any further documents or instruments necessary or reasonably desirable in the view of the Company to carry out the purposes or intent of this Agreement.

H.      *Severability.*  Should any provision of this Agreement be found to be illegal or unenforceable, the other provisions shall nevertheless remain effective and shall remain enforceable to the greatest extent permitted by law.

I.      *Rights as Stockholder.*  Subject to the terms and conditions of this Agreement including but not limited to the grant of Irrevocable Proxy coupled with an Interest, the Purchaser shall have all of the rights of a stockholder of the Company with respect to the Shares from and after the date that the Purchaser delivers a fully executed copy of this Agreement (including the applicable exhibits and attachments to this Agreement) and full payment for the Shares to the Company, and until such time as the Purchaser disposes of the Shares in accordance with this Agreement.  Upon such transfer, the Purchaser shall have no further rights as a holder of the Shares so purchased except (in the case of a transfer to the Company) the right to receive payment for the Shares so purchased in accordance with the provisions of this Agreement, and the Purchaser shall forthwith cause the certificate(s) evidencing the Shares so purchased to be surrendered to the Company for transfer or cancellation.

J.      *Adjustment for Stock Split.*  All references to the number of Shares and the purchase price of the Shares in this Agreement shall be adjusted to reflect any stock split, stock dividend or other change in the Shares which may be made after the date of this Agreement.

K.      ***Ownership.*** For purposes of clarity, the intent of this Agreement is that the Purchaser will own at purchase, 11.75% of the Company's outstanding shares when considered on a fully diluted basis including shares subject to compensatory options issued on or about the date hereof.

L.      ***Reliance on Counsel and Advisors.*** The Purchaser acknowledges that it has had the opportunity to review this Agreement, including any attachments hereto, and the transactions contemplated by this Agreement with its, his or her own legal counsel, tax advisors and other advisors. The Purchaser is relying solely on its, his or her own counsel and advisors and not on any statements or representations of the Company or its agents for legal or other advice with respect to this investment or the transactions contemplated by this Agreement.

M.      ***Counterparts.*** This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute the same agreement. Facsimile copies of signed signature pages shall be binding originals.

*(Signature Page Follows)*

The parties represent that they have read this Agreement in its entirety, have had an opportunity to obtain the advice of counsel prior to executing this Agreement and fully understand this Agreement.  The Purchaser agrees to notify the Company of any change in its address below.

**Company:**
HySky Technologies, Inc.

By: _____
Charles C. Maynard
President and CEO

**Purchaser**
Chura Family Trust

By: _____
Niles K. Chura, Trustee

**Address:**
12494 Cavalier Drive
Woodbridge, VA 22192

**15 Tango, Inc.**

By: _____
Niles K Chura, President

**Address:**
12494 Cavalier Drive
Woodbridge, VA 22192

# EXHIBIT C

# HySky Technologies, Inc.
# Directors Packet of Organic Documents.

## Summary.

This PDF file includes the Company's Certificate of Incorporation filed at the time of the Company's organization, Certificate of Amendment amending the Certificate of Incorporation to increase the Company's authorized shares to 200,000 common shares, $0.01 par value, the Company bylaws adopted at the time of incorporation and a copy of the Shareholder's action increasing the board size to five.

## How to Use.

The file should automatically open to Adobe Acrobat Reader or any similar product installed on your computer.  Once the file opens, permit the display of bookmarks.  This is a default table of contents and each bookmark is linked to the document described in the bookmark.



*The First State*

PAGE  1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "HYSKY TECHNOLOGIES, INC.", FILED IN THIS OFFICE ON THE SIXTEENTH DAY OF OCTOBER, A.D. 2009, AT 4:55 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

4742997  8100

090943307

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W Bullock, Secretary of State

AUTHENTICATION: 7590034

DATE: 10-19-09

### STATE OF DELAWARE
### CERTIFICATE OF INCORPORATION
### A STOCK CORPORATION

**First:** The name of this Corporation is HySky Technologies, Inc.

**Second:** Its registered office in the State of Delaware is to be located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. The registered agent in charge thereof is Corporation Service Company.

**Third:** The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

**Fourth:** The amount of total stock the Corporation is authorized to issue is 100 shares with no par value.

**Fifth:** The name and mailing address of the incorporator are as follows:

James J. Gatziolis
Quarles & Brady LLP
300 N. LaSalle St., Suite 4000
Chicago, IL  60654

I, the undersigned, for the purpose of forming a corporation under the laws of the State of Delaware, do make, file, and record this Certificate, and do certify that the facts herein stated are true, and I have accordingly hereunto set my hand this 16th day of October, 2009.

James J. Gatziolis, Incorporator

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 04:58 PM 10/16/2009*
*FILED 04:55 PM 10/16/2009*
*SRV 090943307 - 4742997 FILE*

QB\9016935.1

# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "HYSKY TECHNOLOGIES, INC.", FILED IN THIS OFFICE ON THE TWELFTH DAY OF SEPTEMBER, A.D. 2022, AT 5:52 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

4742997  8100
SR# 20223503475

Authentication: 204406807
Date: 09-15-22

You may verify this certificate online at corp.delaware.gov/authver.shtml

CERTIFICATE OF AMENDMENT
OF
CERTIFICATE OF INCORPORATION


HySky Technologies, Inc, a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, CERTIFIES:


**FIRST**: That the Directors of HySky Technologies, Inc., by unanimous written action, adopted a resolution proposing and declaring advisable the following amendment to the Certificate of Incorporation of HySky Technologies, Inc:

RESOLVED, that the Certificate of Incorporation of HySky Technologies, Inc be amended by deleting Paragraph Fourth in its entirety and substituting the following:

**Fourth**:  The total number of shares of common stock which the corporation is authorized to issue is two hundred thousand (200,000), at a par value of $0.01 per share.

**SECOND:** That in lieu of a meeting and vote of stockholders, the stockholder has given unanimous consent to this amendment in accordance with the provisions of section 228 of the General Corporation Law of the State of Delaware.

**THIRD:** That the above-stated amendment was duly adopted in accordance with the applicable provisions of sections 242 and 228 of the General Corporation Law of the State of Delaware.

*Signatures on following page.*

State of Delaware
Secretary of State
Division of Corporations
Delivered   05:52 PM 09/12/2022
FILED   05:52 PM 09/12/2022
SR  20223503475  -  File Number   4742997

IN WITNESS WHEREOF, HySky Technologies, Inc has caused this certificate to be signed by Charles C. Maynard its President, and attested by Scot A. Brands, its Secretary, September 12, 2022.

HySky Technologies, Inc.

By: _____

Printed Name: Charles C. Maynard

Title: President

ATTEST:

Signature: _____

Printed Name: Scot A. Brands

Title: Secretary

**BYLAWS**

**OF**

**HYSKY TECHNOLOGIES, INC.**

**ADOPTED**

**October __, 2009**

# ARTICLE I.  OFFICES

1.01.  <u>Registered Office</u>.  The registered office shall be in the City of Wilmington, County of New Castle, State of Delaware.

1.02.  <u>Principal Business Office</u>.  The corporation may also have offices at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or the business of the corporation may require.

# ARTICLE II.  STOCKHOLDERS

2.01.   <u>Place of Meeting</u>.  All meetings of the stockholders for the election of directors shall be held at such place either within or without the State of Delaware as shall be designated from time to time by the Board of Directors and stated in the notice of the meeting. Meetings of stockholders for any other purpose may be held at such time and place, within or without the State of Delaware, as shall be stated in the notice of the meeting or in duly executed waiver of notice thereof.

2.02.  <u>Annual Meeting</u>.  Annual meetings of stockholders shall be held on the first Tuesday of January each year if not a legal holiday, and if a legal holiday, then on the next secular day following, at 10:00 a.m., or at such other date and time as shall be designated from time to time by the Board of Directors.  At such annual meeting, the stockholders shall elect by a plurality vote, by written ballot, a Board of Directors and shall transact such other business as may properly be brought before the meeting.

2.03.  <u>Notice of Meeting</u>.  Written notice of the annual meeting stating the place, date and hour of the meeting shall be given to each stockholder entitled to vote at such meeting not less than ten nor more than sixty days before the date of the meeting.

2.04.   <u>Closing of Transfer Books or Fixing Record Date</u>.  The officer who has charge of the stock ledger of the corporation shall prepare and make, at least ten days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder.  Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not so specified, at the place where the meeting is to be held.  The list shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.

In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or

other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may fix, in advance, a record date, which shall not be more than sixty nor less than ten days before the date of such meeting, nor more than sixty days prior to any other action. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

2.05. <u>Special Meeting</u>. Special meetings of the stockholders, for any purpose or purposes, unless otherwise prescribed by statute or by the Certificate of Incorporation, may be called by the President and shall be called by the President or Secretary at the request in writing of a majority of the Board of Directors, or at the request in writing of stockholders owning a majority in amount of the entire capital stock of the corporation issued and outstanding and entitled to vote. Such request shall state the purpose or purposes of the proposed meeting.

2.06. <u>Notice of Meeting</u>. Written notice of a special meeting stating the place, date and hour of the meeting and the purpose or purposes for which the meeting is called, shall be given not less than ten nor more than sixty days before the date of the meeting, to each stockholder entitled to vote at such meeting. The business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

2.07. <u>Quorum</u>. Except as otherwise provided by statute or by the Certificate of Incorporation, the holders of a majority of the shares of stock issued and outstanding and entitled to vote thereat, present in person or represented by proxy, shall constitute a quorum at all meetings of the stockholders for the transaction of business. If, however, such quorum shall not be present or represented at any meeting of the stockholders, the stockholders entitled to vote thereat, present in person or represented by proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present or represented. At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified. If the adjournment is for more than thirty days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

2.08. <u>Voting of Shares</u>. When a quorum is present at any meeting, the vote of the holders of a majority of the shares of stock having voting power present in person or represented by proxy shall decide any question brought before such meeting, unless the question is one upon which by express provision of the statutes or of the Certificate of Incorporation, a different vote is required in which case such express provision shall govern and control the decision of such question.

Unless otherwise provided in the Certificate of Incorporation, each stockholder shall at every meeting of stockholders be entitled to one vote in person or by proxy for each share of the capital stock having voting power held by such stockholder, but no proxy shall be voted on after three years from its date, unless the proxy provides for a longer period.

2.09.  Action By Written Consent.  Unless otherwise provided in the Certificate of Incorporation, any action required to be taken at any annual or special meeting of stockholders of the corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding shares of stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing.

## ARTICLE III.  DIRECTORS

3.01.  General Powers and Number.  The business of the corporation shall be managed by or under the direction of its Board of Directors which may exercise all such powers of the corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these bylaws directed or required to be exercised or done by the stockholders or by others.

The number of directors which shall constitute the whole Board shall be three (3). The directors shall be elected at the annual meeting of the stockholders, except as provided in Section 3.02 of this Article, and each director elected shall hold office until his or her successor is elected and qualified or until his or her prior death, resignation or removal.  The number of directors may be increased or decreased from time to time by amendment to this Section, adopted by the stockholders or Board of Directors, but no decrease shall have the effect of shortening the term of an incumbent director.  Directors need not be stockholders.

3.02.  Vacancies.  Vacancies and newly created directorships resulting from any increase in the authorized number of directors may be filled by a majority of the directors then in office, though less than a quorum, or by a sole remaining director, and the directors so chosen shall hold office until the next annual election and until their successors are duly elected and shall qualify, unless sooner displaced.  If there are no directors in office, then an election of directors may be held in the manner provided by statute.  If, at the time of filling any vacancy or any newly created directorship, the directors then in office shall constitute less than a majority of the whole Board (as constituted immediately prior to any such increase), the Court of Chancery may, upon application of any stockholder or stockholders holding at least ten percent of the total number of the shares at the time outstanding having the right to vote for such directors, summarily order an election to be held to fill any such vacancies or newly created directorships, or to replace the directors chosen by the directors then in office.

3.03.  Annual Meeting.  The first meeting of each newly elected Board of Directors shall be held immediately following the annual meeting of stockholders at which such Board of Directors was elected at the same place as such annual meeting of stockholders and no notice of such meeting shall be necessary to the newly elected directors in order legally to

QB\9034159.1

constitute the meeting, provided a quorum shall be present.  In the event such meeting is not so held, the meeting may be held at such time and place as shall be specified in a notice given as hereinafter provided for special meetings of the Board of Directors, or as shall be specified in a written waiver signed by all of the directors.

3.04.  Regular Meetings.  Regular meetings of the Board of Directors may be held within or without the State of Delaware without notice, at such time and at such place as shall from time to time be determined by the Board.

3.05.  Special Meetings.  Special meetings of the Board may be held within or without the State of Delaware and may be called by the President on forty-eight hours notice to each director, either personally or by mail or by telegram; special meetings shall be called by the President or Secretary in like manner and on like notice on the written request of two directors.

3.06.  Quorum.  At all meetings a majority of the number of directors as provided in Section 3.01 shall constitute a quorum for the transaction of business at any meeting of the Board of Directors and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board of Directors, except as may be otherwise specifically provided by statute or by the Certificate of Incorporation.  If a quorum shall not be present at any meeting of the Board of Directors the directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

3.07.  Action By Unanimous Written Consent.  Unless otherwise restricted by the Certificate of Incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if all members of the Board or committee, as the case may be, consent thereto in writing, and the writings are filed with the minutes of proceedings of the Board or committee.

3.08.  Participation By Conference Telephone.  Unless otherwise restricted by the Certificate of Incorporation or these bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or any committee, by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

3.09.  Committees of Directors.  The Board of Directors may, by resolution passed by a majority of the whole Board, designate one or more committees, each committee to consist of one or more of the directors of the corporation.  The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not he or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.  Any such committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the

4

management of the business and affairs of the corporation, and may authorize the seal of the corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to amending the Certificate of Incorporation (except that a committee may, to the extent authorized in the resolutions providing for the issuance of shares of stock adopted by the board of directors as provided in Section 151(a) fix any of the preferences or rights of such shares relating to dividends, redemption, dissolution, any distribution of assets of the corporation or the conversion into, or the exchange of such shares for, shares of any other class or classes or any other series of the same or any other class or classes of stock of the corporation), adopting an agreement of merger or consolidation, recommending to the stockholders the sale, lease or exchange of all or substantially all of the corporation's property and assets, recommending to the stockholders a dissolution of the corporation or a revocation of a dissolution, or amending the bylaws of the corporation; and, unless the resolution or the Certificate of Incorporation expressly so provide, no such committee shall have the power or authority to declare a dividend or to authorize the issuance of stock or to adopt a certificate of ownership and merger. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board of Directors. Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

3.10. <u>Compensation</u>. Unless otherwise restricted by the Certificate of Incorporation or these bylaws, the Board of Directors shall have the authority to fix the compensation of directors. The directors may be paid their expenses, if any, of attendance at each meeting of the Board of Directors and may be paid a fixed sum for attendance at each meeting of the Board of Directors or a stated salary as director. No such payment shall preclude any director from serving the corporation in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings.

3.11. <u>Removal of Directors</u>. Unless otherwise restricted by the Certificate of Incorporation or by law, any director or the entire Board of Directors may be removed, with or without cause, by the holders of a majority of shares entitled to vote at an election of directors.

## ARTICLE IV. NOTICES

4.01. <u>Notice</u>. Whenever, under the provisions of the statutes or of the Certificate of Incorporation or of these bylaws, notice is required to be given to any director or stockholder, it shall not be construed to mean personal notice, but such notice may be given in writing, by mail, addressed to such director or stockholder, at his address as it appears on the records of the corporation, with postage thereon prepaid, and such notice shall be deemed to be given at the time when the same shall be deposited in the United States mail. Notice to directors may also be given by telegram.

4.02. <u>Waiver of Notice</u>. Whenever any notice is required to be given under the provisions of the statutes or of the Certificate of Incorporation or of these bylaws, a waiver

thereof in writing, signed by the person or persons entitled to said notice, whether before or after the time stated therein, shall be deemed equivalent thereto.

## ARTICLE V.  OFFICERS

5.01.  <u>Number</u>.  The officers of the corporation shall be chosen by the Board of Directors and shall be a President, a Vice President, a Secretary and a Treasurer and such other officers as may be elected or appointed by the Board of Directors.  Any number of offices may be held by the same person, unless the Certificate of Incorporation or these bylaws otherwise provide.

5.02.  <u>Election and Term of Office</u>.  The Board of Directors at its first meeting after each annual meeting of stockholders shall choose a President, one or more Vice Presidents, a Secretary and a Treasurer.  The officers of the corporation shall hold office until their successors are chosen and qualify.  Any officer elected or appointed by the Board of Directors may be removed at any time by the affirmative vote of a majority of the Board of Directors.  Any vacancy occurring in any office of the corporation shall be filled by the Board of Directors.

5.03.  <u>The President</u>.  The President shall be the chief executive officer of the corporation, shall preside at all meetings of the stockholders and the Board of Directors, shall have general and active management of the business of the corporation and shall see that all orders and resolutions of the Board of Directors are carried into effect.  The President shall direct the affairs and policies of the corporation, subject to any direction which may be given by the Board of Directors.  The President shall have authority to designate the duties and powers of the officers and delegate special powers and duties to specified officers, so long as such designations shall not be inconsistent with applicable laws, these bylaws, or action of the Board of Directors.  The President shall execute bonds, mortgages and other contracts requiring a seal, under the seal of the corporation, except where required or permitted by law to be otherwise signed and executed and except where the signing and execution thereof shall be expressly delegated by the Board of Directors to some other officer or agent of the corporation.

5.04.  <u>The Vice Presidents</u>.  In the absence of the President or in the event of his inability or refusal to act, the Vice President (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the directors, or in the absence of any designation, then in the order of their election) shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President.  The Vice Presidents  shall perform such other duties and have such other powers as the Board of Directors may from time to time prescribe.

5.05.  <u>The Secretary</u>.  The Secretary shall attend all meetings of the Board of Directors and all meetings of the stockholders and shall record all the proceedings of the meetings of the corporation and of the Board of Directors in a book to be kept for that purpose.  The Secretary shall perform like duties for the standing committees when required.   The Secretary shall give, or cause to be given, notice of all meetings of the stockholders and special meetings of the Board of Directors, and shall perform such other duties as may be prescribed by

QB\9034159.1

the Board of Directors or President, under whose supervision he or she shall be.  The Secretary shall have custody of the corporate seal of the corporation (if one is adopted by the Board of Directors) and the Secretary, or an assistant secretary, shall have authority to affix the same to any instrument requiring it.  When so affixed, the corporate seal may be attested by the Secretary's signature or by the signature of such assistant secretary.  The Board of Directors may give general authority to any other officer to affix the seal of the corporation and to attest the affixing by his or her signature.

5.06.  The Treasurer.  The Treasurer shall have the custody of the corporate funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the corporation and shall deposit all moneys and other valuable effects in the name and to the credit of the corporation in such depositories as may be designated by the Board of Directors.  The Treasurer shall disburse the funds of the corporation as may be ordered by the Board of Directors, taking proper vouchers for such disbursements, and shall render to the President and the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all his or her transactions as Treasurer and of the financial condition of the corporation.  If required by the Board of Directors, the Treasurer shall give the corporation a bond (which shall be renewed every six years) in such sum and with such surety or sureties as shall be satisfactory to the Board of Directors for the faithful performance of the duties of the office and for the restoration to the corporation, in case of the Treasurer's death, resignation, retirement or removal from office, of all books, papers, vouchers, money and other property of whatever kind in the Treasurer's possession or under his or her control belonging to the corporation.

5.07.  Other Assistants and Acting Officers.  The Board of Directors may, from time to time appoint such other officers and agents as it shall deem necessary who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board.

5.08.  Salaries.  The salaries of all officers and agents of the corporation shall be fixed by the Board of Directors.

ARTICLE VI.
CERTIFICATE FOR SHARES OF STOCK
AND THEIR TRANSFER

6.01.  Certificate for Shares.  The shares of the corporation may be represented by a certificate or may be uncertificated.  Certificates shall be signed by, or in the name of the corporation by, the chairman or vice chairman of the Board of Directors, if any, or the President or a Vice President and the Treasurer or the Secretary of the corporation, certifying the number of shares owned by such holder in the corporation.

Upon the face or back of each stock certificate issued to represent any partly paid shares, or upon the books and records of the corporation in the case of uncertificated partly paid

shares, shall be set forth the total amount of the consideration to be paid therefor and the amount paid thereon shall be stated.

If the corporation shall be authorized to issue more than one class of stock or more than one series of any class, the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualification, limitations or restrictions of such preferences and/or rights shall be set forth in full or summarized on the face or back of the certificate which the corporation shall issue to represent such class or series of stock, provided that, except as otherwise provided in Section 202 of the General Corporation Law of Delaware, in lieu of the foregoing requirements, there may be set forth on the face or back of the certificate which the corporation shall issue to represent such class or series of stock, a statement that the corporation will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights.

Within a reasonable time after the issuance or transfer of uncertificated stock, the corporation shall send to the registered owner thereof a written notice containing the information required to be set forth or stated on certificates pursuant to Sections 151, 156, 202(a) or 218(a) or a statement that the corporation will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights.

6.02.  Facsimile Signatures.  Any of or all the signatures on the certificate may be facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the corporation with the same effect as if that person were such officer, transfer agent or registrar at the date of issue.

6.03.  Lost Certificates.  The Board of Directors may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed.  When authorizing such issue of a new certificate or certificates, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost, stolen or destroyed certificate or certificates, or his or her legal representative, to advertise the same in such manner as it shall require and/or to give the corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the corporation with respect to the certificate alleged to have been lost, stolen or destroyed.

6.04.  Transfers of Shares.  Upon surrender to the corporation or the transfer agent of the corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignation or authority to transfer, it shall be the duty of the corporation to issue a new certificate to the person entitled thereto, cancel the old certificate and record the transaction upon its books.

8

6.05.  Registered Stockholders.  The corporation shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner, and to hold liable for calls and assessments a person registered on its books as the owner of shares.  The corporation shall not be bound to recognize any equitable or other claim to or interest  in such share or shares on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of the State of Delaware.

## ARTICLE VII.
## INDEMNIFICATION OF DIRECTORS, OFFICERS AND EMPLOYEES

7.01.  Indemnification.  The corporation shall indemnify to the full extent permitted by, and in the manner permissible under, the laws of the State of Delaware any person made, or threatened to be made, a party to an action or proceeding, whether criminal, civil, administrative or investigative, by reason of the fact that the person, his or her testator or intestate, is or was a director or officer of the corporation or any predecessor of the corporation, or served any other enterprise as a director or officer at the request of the corporation or any predecessor of the corporation.

7.02  General.  The foregoing provisions of this Article VII shall be deemed to be a contract between the corporation and each director and officer who serves in such capacity at any time while this bylaw is in effect, and any repeal or modification thereof shall not affect any rights or obligations then existing with respect to any state of facts then or theretofore existing or any action, suit or proceeding theretofore or thereafter brought based in whole or in part upon any such state of facts.

The foregoing rights of indemnification shall not be deemed exclusive of any other rights to which any director or officer may be entitled apart from the provisions of this Article VII.

The Board of Directors in its discretion shall have power on behalf of the corporation to indemnify any person, other than a director or officer, made a party to any action, suit or proceeding by reason of the fact that the person, his or her testator or intestate, is or was an employee of the corporation.

## ARTICLE VIII.  GENERAL PROVISIONS

8.01.  Dividends.  Dividends upon the capital stock of the corporation, subject to the provisions of the Certificate of Incorporation, if any, may be declared by the Board of Directors at any regular or special meeting, pursuant to law.  Dividends may be paid in cash, in property, or in shares of the capital stock, subject to the provisions of the Certificate of Incorporation.  Before payment of any dividend, there may be set aside out of any funds of the corporation available for dividends such sum or sums as the directors from time to time, in their

QB\9034159.1

absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or for such other purpose as the directors shall think conducive to the interest of the corporation, and the directors may modify or abolish any such reserve in the manner in which it was created.

8.02.   Annual Statement.   The Board of Directors shall present at each annual meeting, and at any special meeting of the stockholders when called for by vote of the stockholders, a full and clear statement of the business and condition of the corporation.

8.03.   Checks.   All checks or demands for money and notes of the corporation shall be signed by such officer or officers or such other person or persons as the Board of Directors may from time to time designate.

8.04.   Loans.   No loans shall be contracted on behalf of the corporation and no evidences of indebtedness shall be issued in its name unless authorized by a resolutions of the Board of Directors.

8.05.   Fiscal Year.   The fiscal year of the corporation shall be fixed by resolution of the Board of Directors.

8.06.   Seal.   The corporation may have a seal which shall have inscribed thereon the name of the corporation and the words "Corporate Seal, Delaware."   The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise.

## ARTICLE IX.  AMENDMENTS

These bylaws may be altered, amended or repealed or new bylaws may be adopted by the stockholders or by the Board of Directors, when such power is conferred upon the Board of Directors by the Certificate of Incorporation, at any regular meeting of the stockholders or of the Board of Directors or at any special meeting of the stockholders or of the Board of Directors if notice of such alteration, amendment, repeal or adoption of new bylaws be contained in the notice of such special meeting.   If the power to adopt, amend or repeal bylaws is conferred upon the Board of Directors by the Certificate of Incorporation, it shall not divest or limit the power of the stockholders to adopt, amend or repeal bylaws.

Any action taken or authorized by the stockholders or by the Board of Directors, which would be inconsistent with the Bylaws then in effect but is taken or authorized by a vote that would be sufficient to amend the Bylaws so that the Bylaws would be consistent with such action, shall be given the same effect as though the Bylaws had been temporarily amended or suspended so far, but only so far, as is necessary to permit the specific action so taken or authorized.

ARTICLE X.  STOCK TRANSFER RESTRICTION

In the event the corporation makes a valid election, pursuant to §1362 of the Internal Revenue Code of 1986, or any successor provision thereto, to be treated as an S Corporation, no stockholder of the corporation shall, without the written consent of stockholders holding more than fifty percent (50%) of the outstanding stock of the corporation, transfer any shares of stock to any person who, by reason of being a stockholder of the corporation, will cause a termination of the corporation's election to be treated as an S Corporation.

QB\9034159.1

# WRITTEN CONSENT

# OF

# THE SOLE STOCKHOLDER OF

# HYSKY TECHNOLOGIES, INC.

The undersigned, being the sole stockholder of HySky Technologies, Inc, a Delaware Corporation (the "**Company**"), acting by written consent without a meeting pursuant to Section 228 of the Delaware General Corporation Law, does hereby consent to the adoption of the following resolutions and direct that this consent be filed with the minutes of the proceedings of the stockholders of the Company:

**AMENDMENT OF BY-LAWS**

WHEREAS, the shareholder has determined that it is in the best interests of the Company to amend the By-laws of the Company (the "By-laws") to increase the number of Directors (the "By-law Amendments");

**NOW THEREFORE LET IT BE:**

RESOLVED, that the second paragraph of Article Three, Section 1 of the By-laws is hereby amended to read in full as follows:

The number of directors which shall constitute the whole Board shall be five (5). The directors shall be elected at the annual meeting of the stockholders, except as provided in Section 3.02 of this Article, and each director elected shall hold office until his or her successor is elected and qualified or until his or her prior death, resignation or removal. The number of directors may be increased or decreased from time to time by amendment to this Section, adopted by the stockholders or Board of Directors, but no decrease shall have the effect of shortening the term of an incumbent director. Directors need not be stockholders.

**APPOINTMENT OF DIRECTORS.**

**NOW THEREFORE LET IT BE:**

RESOLVED, that as of the date of these resolutions, the following persons be and hereby are elected to the Board of Directors of the corporation, to fill the newly created directorships on the Board of Directors until the next annual meeting of the stockholders of the corporation or until their earlier resignation or removal:

Niles Chura

Rod Hackman

RESOLVED, that the following person is designated the Chair of the Board of Directors.

Charles C. Maynard

**Approval of Equity Incentive Plan**

WHEREAS, the sole stockholder of the Company believes that it is advisable and in the best interests of the Company and its shareholder to provide for the issuance of equity incentive awards, such as options, restricted stock and stock appreciation rights, in order to attract and retain qualified personnel, directors and consultants and align their interests with those of the Company's shareholder.

**NOW THEREFORE LET IT BE:**

RESOLVED, that the Company's HySky TECHNOLOGIES, INC. 2022 EQUITY INCENTIVE PLAN (the "Plan"), in the form of the draft thereof dated September 13, 2022, attached hereto as Exhibit A, be, and it hereby is, approved.

RESOLVED, that 28,000 shares of common stock, par value $0.01, per share, of the Company (the "Common Stock") shall be set aside and reserved for issuance pursuant to the Plan, subject to adjustments as may be required in accordance with the terms of the Plan;

RESOLVED, that all such shares of Common Stock, when issued pursuant to the terms of awards made under the Plan, shall be duly and validly issued, fully paid and non-assessable shares of capital stock of the Company.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the undersigned stockholder has duly executed this Written Consent as of September 12, 2022.

_____
The Oatland Group, LLC, by Charles C.
Date: September 12, 2022                Maynard, Manager

# EXHIBIT D

HySky Technologies, Inc.
124 Oatland Rd.
Savannah GA 31410            July 24th 2023

Rhodric C. Hackman   Trustee
Hackman Family Trust
141 Via Paradisio
Palm Beach Gardens 33418

Dear Rod,   Section 3 of that certain Restricted Stock Purchase Agreement dated October 28, 2022, between HySky Technologies, Inc. (the "Company") and the Hackman Family Trust (the "Purchaser") provides:

> *The Company shall, repurchase at a price per share equal to the Cash Purchase Price (the "Repurchase Price") any of the Unvested Shares which have not yet been released from the Repurchase…at the occurrence of the following:*

> > *(A) At any date provided in the Vesting Table if the Company fails to attain any Milepost therein provided…*

As you are undoubtedly aware, as of June 30, 2023, the Company had not received any Funding as that term is defined in the Agreement. The Company is required to repurchase all shares held by the Purchaser at the Repurchase Price of $0.01 per share. Please find enclosed, the Company's payment of $117.50 for the purchase of 11,750 shares representing all shares purchase pursuant to the Agreement. The Agreement provided for one milepost previous to June 30, 2023, and that was on December 31, 2022, at which time the Company first was required to purchase 282 shares. The Agreement states that it is terminated upon completion of the repurchase.   *Check # 1174 Attached*

You are not required to endorse the shares but if you should desire to do so, the Company will provide you with an Assignment Separate from Certificate for all the shares in question. The shares will be transferred as of the date of this letter.

Sincerely,

HySky Technologies, Inc.

C.C. Maynard
President and CEO

Enclosures: #
CC:



HYSKY TECHNOLOGIES INC.
P.O. BOX 6250
SAVANNAH, GA 31414

64-10/610          1174

*July 24th 2023*

PAY TO the order of *Rod Hackman  Hackman Family Trust*  $ *117.50*

*One Hundred and Seventeen — 50* DOLLARS

**SUNTRUST**     ACH RT 061000104

MEMO *Repurchase Shares*

REDACTED       1174



RHODRIC C HACKMAN
HACKMAN FAMILY TRUST
U/A 6/21/04
141 VIA PARADISIO
PALM BEACH GARDENS, FL 33418

Fidelity Account®          3463
80-568/1012

Nov 1 2022    Date

Pay to the
Order of    HYSKY TECHNOLOGIES, INC.    $ 117.50

one hundred, seventeen and ————— 50/100 Dollars

Photo
Safe
Deposit®
Details on back

Fidelity
INVESTMENTS    UMB Bank, N.A.
Kansas City, MO

For RESTRICTED STOCK PURCHASE
11,750 SHARES

REDACTED



Rhodric Hackman
141 Via Paradisio
Palm Bch Gdns, FL 33418-6204

CHARLIE MAY NARD
CEO, HYSKY TECHNOLOGIES, INC
124 OATLAND ISLAND RD.
SAVANNAH, GA 31410

# EXHIBIT E

| | |
|---|---|
| **From:** | ccmaynard@aol.com |
| **To:** | rhackman@mercatorcapital.com |
| **Cc:** | sab33428@gmail.com; james.gatziolis@gmail.com |
| **Subject:** | HySky Board of Directors - Rod Hackman |
| **Date:** | Monday, July 24, 2023 2:06:44 PM |

Mr. Hackman,

You have been removed as a director of HySky Technologies, Inc, effective immediately.  The Company thanks you for your service and wishes you good fortune in your endeavors.

HySky Technologies, Inc.

By: CC Maynard, President, and CEO

# EXHIBIT F

HySky Technologies, Inc.
124 Oatland Island Rd.
Savannah, GA 31410                                         July 24th 2023

Niles Chura   Trustee   Chura Family Trust
12494 Cavalier Drive
Woodbridge, VA 22192

Dear Niles,    Section 3 of that certain Restricted Stock Purchase Agreement dated October 28, 2022, (the "Agreement") between HySky Technologies, Inc. (the "Company") and the Chura Family Trust (the "Purchaser") provides:

*The Company shall, repurchase at a price per share equal to the Cash Purchase Price (the "Repurchase Price") any of the Unvested Shares which have not yet been released from the Repurchase...at the occurrence of the following:*

*(A) At any date provided in the Vesting Table if the Company fails to attain any Milepost therein provided...*

As you are undoubtedly aware, as of June 30, 2023, the Company had not received any Funding as that term is defined in the Agreement. The Company is required to repurchase all shares held by the Purchaser at the Repurchase Price of $0.01 per share. Please find enclosed, the Company's payment of $117.50 for the purchase of 11,750 shares representing all shares purchase pursuant to the Agreement. The Agreement provided for one milepost previous to June 30, 2023, and that was on December 31, 2022, at which time the Company first was required to purchase 282 shares. The Agreement states that it is terminated upon completion of the repurchase.

You are not required to endorse the shares but if you should desire to do so, the Company will provide you with an Assignment Separate from Certificate for all the shares in question. The shares will be transferred as of the date of this letter.

Sincerely,

HySky Technologies, Inc.

C.C. Maynard
President and CEO

Enclosures: #
CC:

HYSKY TECHNOLOGIES INC.                                    64–10/610              1173
P.O. BOX 6250
SAVANNAH, GA 31414                         July 24th 2023
                                                          DATE

PAY TO          Niles Chura Chura family Trust         $ 117.50
the order of
          One Hundred & Seventeen          50  DOLLARS

SunTrust          ACH RT 061000104
MEMO   Share Repurchase

REDACTED          1173

1017

**CHURA FAMILY TRUST**
**NILES K CHURA TRTEE**
09-20
U/A 08/18/2020
12494 CAVALIER DR
WOODBRIDGE, VA 22192-3315

68-1/510 VA
10713

DATE 8 NOV 2022

PAY TO THE
ORDER OF    Hy Sky Technologies, Inc.    $ 117.50

one hundred sinteen & 50/100 ——— **DOLLARS**

**BANK OF AMERICA**

ACH R/T 051000017

FOR    Share Purchase

REDACTED

WEST PALM BCH FL 334

8 NOV 2022   PM 1   L

Hy Sky Technologies, Inc.
124 oatland island Rd.
Savannah, GA 31410

# EXHIBIT G

| | |
|---|---|
| **From:** | ccmaynard@aol.com |
| **To:** | nileskchura@gmail.com |
| **Cc:** | james.gatziolis@gmail.com; sab33428@gmail.com |
| **Subject:** | HySky Board of Directors - Niles Chura |
| **Date:** | Monday, July 24, 2023 2:03:02 PM |

Mr. Chura

You have been removed as a director of HySky Technologies, Inc, effective immediately.  The Company thanks you for your service and wishes you good fortune in your endeavors.

HySky Technologies, Inc.

By: CC Maynard, President, and CEO

# EXHIBIT H



ROCK SPRING LAW GROUP

Rock Spring Law Group PLLC
1050 30th Street, NW
Washington, D.C. 20007
Tel:  +1 202 258-2776
www.rockspringlaw.com

Carl A. Anderson
Founder and Managing Partner
Direct Dial: +1 202 258 2776
caa@rockspringlaw.com

June 17, 2024

Charles C. Maynard
President and CEO
HySky Technologies, Inc.
225 Corey Center
Atlanta, GA 30312

**Re: Demand for Remedial Action and Compliance with Securities Agreement**

Dear Charlie,

I write to you on behalf of Niles Chura and Rhodric Hackman (our "Client") regarding the Agreements and Side Letters executed between Mr. Chura and Mr. Hackman and Charles Maynard, acting on behalf of Oatland Group LLC ("Oatland"), the controlling shareholder of HySky Technologies, Inc. ("HySky"). It has come to our attention that Oatland and HySky are in breach of said Agreements and Side Letters, coupled with allegations of fraudulent activities and interference with our Client's business relationships.

**Breach of Contract**
The Agreements mandate certain obligations for the parties. Having relied on your promises regarding the awarding of shares of HySky, with such promises memorialized in the Agreements, our Client expended substantial resources for the benefit of HySky, and indirectly Oatland and you. Our Client's efforts on behalf of HySky, conducted substantially without your involvement, proved successful, which is not in dispute. Regrettably, Mr. Maynard, you failed to meet your obligations, notably your continued efforts to frustrate our Client's work culminating in the blatant breach of the Agreements by claiming to have the unilateral right to repurchase their shares despite the terms having been substantially met and your unilateral dismissal of them from the Board of Directors of HySky. Such breaches not only undermine the Agreement but also harmed our Client's business operations and financial well-being.

**Tortious Interference**
Furthermore, evidence suggests that you unlawfully interfered with our Client's contractual and business relationships by forbidding them from negotiating for HySky, "cutting them out" of discussions with investors our Client brought to HySky, and continuing to make unreasonable demands that are detrimental to shareholders, which include our Client. These unilateral and unconscionable actions directly impeded our Client's efforts to meet their obligations, harmed their interests, and resulted in financial losses.

**Allegations of Fraud**

We have reason to believe that you engaged in actions constituting fraud, particularly by knowingly inducing our Client to expend extensive resources for the direct benefit of HySky, and indirectly Oatland and you, while simultaneously conspiring to thwart our Client from benefiting from such efforts. Your actions suggest a deliberate intent to mislead and deceive, causing significant harm to our Client.

**Demand for Immediate Rectification**

Our Client has repeatedly attempted to reconcile with you and, as you know, our Client continues working to assist HySky in accordance with their obligations under the Agreements, notwithstanding your consistent rebuffing of those efforts at every turn. These actions negatively impact not just our Client, but all shareholders. Therefore, in light of the above, we demand that Mr. Maynard, Oatland and HySky take immediate remedial action:

1. Cease all actions violating the Agreement.
2. Rescind claims of the right to repurchase shares.
3. Agree to work cooperatively with our Client to engage with potential investors.
4. Compensate our client through the immediate vesting of all shares for damages suffered due to these breaches, fraudulent actions, and interference.
5. Provide written assurance by **June 24, 2024** to uphold all terms of the Agreement and refrain from further detrimental actions.

Alternatively, you may rectify your breaches by compensating our Client in the amount of $4,700,000, which is the value of our Client's shares in HySky based on your stated $20,000,000 valuation of HySky's equity.

Failure to comply with these demands may necessitate legal action to safeguard our Client's rights and interests, including seeking remedies for breach of contract, compensatory and punitive damages, and associated legal costs.

We urge you to address these issues promptly and comprehensively. For further discussion or clarification, please contact me directly.

Very truly yours,

s/ Carl A. Anderson

cc:     James Gatziolis, Esq.
        David J. McDowell
        William H. Pickle
        Niles K. Chura
        Rhodric Hackman