```
IN THE UNITED STATES DISTRICT COURT FOR THE
        SOUTHERN DISTRICT OF GEORGIA
              SAVANNAH DIVISION
```

| | |
|---|---|
| HYSKY TECHNOLOGIES, INC., | * |
| Plaintiff, | * |
| v. | *   CV 424-162 |
| RHODRIC C. HACKMAN, et al., | * |
| Defendants. | * |

**O R D E R**

Before the Court is Defendants' motion to dismiss. (Doc. 11.) For the following reasons, Defendants' motion is **DENIED**.

## I. BACKGROUND

Plaintiff filed this declaratory judgment action on July 26, 2024. (Doc. 1.) It asserts jurisdiction is proper under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000. (Id. at 2.) It also asserts venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the suit occurred in this District. (Id.) The relevant facts are as follows.

Plaintiff transferred certain unvested shares in it to Defendants, subject to repurchase options under Restricted Stock Purchase Agreements (the "Agreements"). (Id. at 1.) Under the

Agreements, Defendants' unvested shares would vest if, and only if, Plaintiff received certain funding amounts by set deadlines referred to as "Mileposts." (Id. at 1, 12, 21.) If Plaintiff did not secure funding by the Mileposts, Defendants' unvested shares would be repurchased by Plaintiff. (Id.)

Around October 28, 2022, Plaintiff and Defendant Hackman entered into a Restricted Stock Purchase Agreement (the "Hackman RSA") where Plaintiff agreed to sell Defendant Hackman 11,750 unvested shares of Plaintiff's common stock for $0.01 per share. (Id. at 3, 12-19.) The same day, Plaintiff and Defendant Chura entered into a Restricted Stock Purchase Agreement (the "Chura RSA") with the same terms.[1] (Id. at 3, 21-28.) After the Parties entered the Agreements, Plaintiff's principal shareholder delivered each Defendant a letter stating it would vote to elect each of them, in their individual capacities, to Plaintiff's Board of Directors. (Id. at 5.) Defendants were then appointed to Plaintiff's Board of Directors, and neither served in any other role or capacity for Plaintiff other than as a Director. (Id. at 5-6.)

The Agreements contain a Vesting Table that lays out the Mileposts, including the date, amount of funding required, number of shares that would be vested and released, and action of

---

[1] Plaintiff alleges the Hackman RSA and Chura RSA are identical aside from the names of the purchasers. (Doc. 1, at 3 n.1.)

2

Plaintiff and purchaser if a Milepost was not attained. (Id. at 13-14, 22-23.) The Agreements also contain a Repurchase Option that provides Plaintiff shall repurchase any unvested shares both at any date provided in the Vesting Table if Plaintiff fails to attain any Milepost and on the date three months after the date the relevant Defendant ceases its service to Plaintiff. (Id. at 14, 23.) To exercise the Repurchase Option, Plaintiff must deliver written notice to Defendants with a check in the amount of the aggregate repurchase price. (Id.) Upon delivery of the notice and payment, Plaintiff "shall become the legal and beneficial owner" of the unvested shares being repurchased. (Id.)

As of the filing of this suit, none of the Mileposts in the Vesting Table had been met. (Id. at 6.) As of December 31, 2022, Plaintiff did not receive funding of $3,000,000.00 (the "First Milepost") and as of June 30, 2023, Plaintiff did not receive funding of $12,000,000, including the $3,000,000 noted above (the "Second Milepost"). (Id.) The Vesting Table provided that if the First Milepost was not met, Plaintiff would repurchase 282 shares, and if the Second Milepost was not met, unvested shares would be repurchased and the Agreements terminated unless Plaintiff extended the date for performance. (Id. at 13, 22.) There are no allegations Plaintiff extended the performance deadline for either Milepost.

On July 23, 2023, Plaintiff sent Defendants notices that the Second Milepost was not met and, as a result, it was repurchasing their unvested shares and terminating the Agreements. (Id. at 6-7.) Plaintiff included a check for the repurchase price of $117.50 in each Defendant's letter. (Id.) On July 24, 2023, Plaintiff sent them each an email notifying them they had been removed from Plaintiff's Board of Directors, effective immediately. (Id. at 7.)

Since July 2023, Plaintiff and Defendants have had several communications about the repurchased shares. (Id.) On June 17, 2024, Defendants' counsel sent Plaintiff a "Demand for Remedial Action and Compliance with Securities Agreement" (the "Demand"), including claims that Plaintiff is liable for breach of contract, tortious interference, and fraud, and demanding Plaintiff pay Defendants $4,700,000. (Id. at 7-8.) The Demand also asserts that Defendants still own certain shares in Plaintiff despite Plaintiff believing it had repurchased all unvested shares. (Id. at 8.)

Plaintiff now seeks declaratory judgment that it repurchased all of Defendants' unvested shares, and neither Defendant owns any shares in Plaintiff. (Id. at 9.) Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing the case is not ripe because as of the filing of Defendants' motion to dismiss, the final Milepost had yet to occur. (Doc. 11, at 1.)

4

They argue that 65% of the total shares have not hit their vesting benchmark yet, so the Court cannot render a declaratory decision that addresses the entire controversy and will be left issuing piecemeal orders. (Id. at 1-2.) Defendants urge the Court to dismiss Plaintiff's action until a declaratory decision would fully adjudicate the Parties' dispute. (Id. at 2.) Plaintiff responded, arguing its claims are ripe because there are no future contingencies that will determine Plaintiff's rights to the shares. (Doc. 15, at 2.) It asserts it exercised its right to repurchase Defendants' unvested shares in June 2023, and the Agreements were terminated at that time. (Id. at 1-2.) Defendants replied, again arguing the case is not ripe because the date of the Third Milepost has not yet occurred.[2] (Doc. 18, at 1.) The motion has been fully briefed and is ripe for the Court's review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits litigants to move for dismissal when the court lacks jurisdiction over the subject matter of a dispute. FED. R. CIV. P. 12(b)(1). Defendants move to dismiss based on ripeness, which "goes to whether the district court has subject matter jurisdiction to hear the case."

---

[2] Defendants contend the Court will be in a better position to provide guidance after the final Milepost date of June 30, 2025. (Doc. 18, at 1.) This date has since passed and neither Party has filed anything outlining any change in its position on the pending motion to dismiss.

5

Digit. Props., Inc. v. City of Plantation, 121 F.3d 586, 591 (11th Cir. 1997) (citation omitted). Since "ripeness pertains to federal courts' subject matter jurisdiction, it is properly raised in a Rule 12(b)(1) motion" and "poses a facial, rather than a factual, attack on the allegations." Bussey v. Macon Cnty. Greyhound Park, Inc., No. 3:10-CV-191, 2011 WL 1216296, at *5 n.6 (M.D. Ala. Mar. 31, 2011) (citing Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 807 (11th Cir. 1993); McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007)). "A 'facial attack' on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." McElmurray, 501 F.3d at 1251 (citations and internal quotation marks omitted and alterations adopted).

Under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not

6

required, Rule 8 "demands more than an unadorned, the – defendant – unlawfully – harmed – me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) (alteration adopted). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-80. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

### III. DISCUSSION

Defendants move to dismiss, arguing the case is not ripe because almost 65% of the shares in the Vesting Table have not yet vested under any Party's theory of the case. (Doc. 11, at 5.) They argue that the Declaratory Judgment Act requires cases to present a controversy capable of adjudication, and this case does

not meet this standard because the Court cannot address the majority of their disputed shares. (Id. at 6-9.) Defendants include lots of background facts that they contend discovery will reveal when the case becomes ripe. (Id. at 2-5, 8.) In response, Plaintiff first urges the Court to ignore Defendants' factual assertions, as they are not proper for a motion to dismiss. (Doc. 15, at 6-7.) Plaintiff then argues the case is ripe because it repurchased all of Defendants' shares as provided in the Vesting Table when it did not receive funding by the Second Milepost. (Id. at 7.) Under Plaintiff's allegations, it argues there is a substantial controversy between the Parties. (Id. (citation omitted).)

Preliminarily, as to the factual assertions Defendants contend discovery will reveal, the Court notes that they are irrelevant at this stage of litigation. See Twombly, 550 U.S. at 555; McAllister Towing & Transp. Co. v. Thorn's Diesel Serv., Inc., 131 F. Supp. 2d 1296, 1300 (M.D. Ala. 2001) ("In reviewing a motion to dismiss, the court accepts as true the complaint's well pleaded facts, even if disputed." (citation omitted)). Thus, the Court relies on Plaintiff's well-pled allegations to decide this motion to dismiss, not Defendants' allegations about what discovery will reveal.

Turning to Defendants' arguments of ripeness, Defendants argue that since the Third Milepost had not passed as of the filing

of this suit, the controversy is not ripe for the Court's review. (Doc. 11, at 5-11.) The Court disagrees with Defendants' characterization of the controversy. As laid out in the Vesting Table, if the Second Milepost was not met by June 30, 2023, the "Unvested Shares will be repurchased and agreement is terminated" unless Plaintiff extended the date for performance. (Doc. 1, at 13, 22.) The Complaint provides that the Second Milepost was not met, so this Repurchase Option was triggered on June 30, 2023, and Plaintiff repurchased Defendants' unvested stock by notifying Defendants and sending them a check. (Id. at 6-7.) Thus, it is irrelevant that the Third Milepost was still outstanding when this suit was filed, because the Shares had already been repurchased and the Agreements already terminated. As such, Defendants' argument that the case is not ripe is meritless and their motion to dismiss is **DENIED**.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss (Doc. 11) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 14th day of August, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

9